**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ADRIAN L. JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **13-cv-7230** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **BOARD OF EDUCATION OF THE CITY** | ) | |
| **OF CHICAGO and JOHN THOMAS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adrian L. Jackson ("Jackson") filed this lawsuit against Defendants the Board of Education of the City of Chicago and John Thomas under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1983. He alleges Defendants refused to hire him due to his sex and in retaliation for a sex discrimination lawsuit that he previously had filed against the Board. In support, he claims to have made a secret recording of several Board employees that implicates Thomas and the Board.

Jackson argues that this evidence entitles him to summary judgment on both his Title VII and § 1983 claims. Defendants, in turn, have filed a cross-motion, arguing that the recording is inadmissible, and without it, there is no evidence in the record that supports Jackson's Title VII claim. Defendants further argue that Jackson's § 1983 claim is time-barred, merely duplicative of his Title VII claim, and lacks merit. For the reasons provided herein, the Court denies Jackson's motion for

summary judgment and grants Defendants' motion.

## I. Factual Background[1]

### A.  Jackson's History of Employment with the Board

The Board employed Jackson from 1990 to September 25, 2010.  *See* Defs.' LR 56.1(a)(3) Stmt.  ¶ 5.  Jackson worked as a substitute and full-time teacher at various elementary schools until 2000, when he became a facilitator with the Board's Office of Early Childhood.  Then, in 2004, he became an Assistant Principal at George W. Curtis Elementary School ("Curtis Elementary").  *See id.* ¶ 11.  There, Jackson initially worked under Principal Dushan Brown; when Principal Brown retired in 2006, Principal Simms[2] took over as interim principal of the school.  *See id.* ¶¶ 11–12.  Principal Simms did not retain Jackson as an Assistant Principal, and Jackson left his job at Curtis Elementary on September 1, 2006.  *See id.* ¶ 12.

---

[1]  The following facts are undisputed, unless otherwise noted.  In various instances, Jackson fails to rebut Defendants' Local Rule fact statements, fails to properly support his own Local Rule statements, or offers as evidence a declaration that contradicts his prior deposition testimony.  On those occasions, the Court has deemed Defendants' Local Rule statements of fact admitted or excluded Jackson's statements of fact where appropriate.  Two principal issues bear mentioning.  First, Jackson disputes many of Defendants' Local Rule statements based solely on a purported transcript of a conversation between himself and members of the Board, which Plaintiff provides as Ex. B.  *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 4, 7, 10, 21–23, 25–27, 34–38, 43–44, 46, 50–51, 55–56, 72, 76–77.  But, for the reasons discussed below, Ex. B is inadmissible.  Accordingly, it cannot be used to dispute Defendants' factual statements, and those statements are deemed admitted.  Second, at several points Jackson supports his own Local Rule statements with a declaration that contradicts with his deposition testimony.  *See* Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 1, 5, 16, 18–19, 25, 29 31–32, 34.  But Plaintiff cannot rely upon a declaration that contradicts his prior deposition testimony to evade summary judgment.  *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001) ("[A] party may not attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an affidavit that contradicts prior deposition testimony.").

[2]  Jackson does not remember Principal Simms's first name.  *See* Defs.' LR 56.1(a)(3) Stmt., Ex. C, Jackson Dep. 96:21–23, Sept. 19, 2014.

Jackson, however, was rehired as an Assistant Principal at Curtis Elementary in May 2007 when Charles Davis became the new principal. *See id.* ¶ 13. In August 2007, soon after being rehired, Jackson filed *Adrian Jackson v. Board of Education of the City of Chicago et al*, Case No. 07L008706 (Aug. 17, 2007), against the Board, alleging breach of contract, sex discrimination, and wrongful termination, all stemming from Principal Simms's prior decision not to retain Jackson at Curtis Elementary. *See id.* ¶ 14; *see also* Pl.'s LR 56.1(a)(3) Stmt. ¶ 3. In June 2010, this lawsuit went to mediation, and the parties attempted to settle the case. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 14.

In the meantime, Principal Davis retired from Curtis Elementary in 2009, and a new principal took over. *See id.* ¶ 15. The new principal did not retain Jackson as an Assistant Principal; instead, sometime in November or December of 2009, Jackson was reassigned to Area 23, where he worked until September 25, 2010. *See id*; *see also* Pl.'s LR 56.1(a)(3) ¶ 5; Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 5.

### B.  Employment and Job Search at Area 23

At Area 23, Jackson worked under Eugene Crawford ("Crawford"), who was Jackson's immediate supervisor and the Management Support Director ("MSD") of Area 23. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 6. In turn, Crawford reported to Thomas, the Chief Area Officer ("CAO") of Area 23. *See id.* ¶ 3. As CAO, Thomas could recommend individuals for interim principal positions, but did not have the final decision-making authority over interim principal appointments. *See id.* ¶ 63. Thomas also had no role in recommending candidates for assistant principals, nor

did he have the authority to hire permanent candidates for any school or central office positions with the Board. *See id.*

While at Area 23, Jackson began to apply for new positions in July or August of 2010. *See id.* ¶ 16. Jackson subsequently had five interviews for positions with the Board. *See id.* ¶ 17. These five interviews were: (1) in August or September, 2010, for an MSD position; (2) sometime in 2011 or 2012, for a parent support coordinator position; (3) in 2010 or 2011, for a "PASS instruction director" position; (4) in 2010, for an AP position at a school, the name of which Jackson does not recall; (5) in 2010, at Harper High School for an AP position. *See id.*

On each occasion, Jackson was interviewed by a different panel consisting of multiple interviewers. Jackson is unable to identify any of the panel members, except for Crawford, who was on the panel when Jackson interviewed for two of the five positions. *See id.* ¶ 18. With respect to the two positions, it is undisputed that no candidate was selected for the first position, and Jackson was not selected for the second position because his interview ratings were lower than the selected candidate. *See id.* Thomas was not on any of the interview panels. *See id.* ¶ 19.

Jackson also applied for a "Culture of Calm" coordinator position in August 2010 at Corliss High School with Principal Anthony Spivey ("Spivey"). *See id.* ¶ 44. Spivey did not conduct the initial round of interviews and did not tell the initial interviewers not to hire Jackson. *See id.* Because the initial interviewers did not recommend that Jackson go on to the next round, Spivey did not interview Jackson as part of the subsequent round of interviews. *See id.*

Other job opportunities came. In September 2010, Jackson was offered a position teaching at Gage Park High School ("Gage Park") by the school's principal. *See id.* ¶ 21. But, according to Jackson, this opportunity "went away." *See id.* Jackson also interviewed for a position at Hillcrest High School ("Hillcrest"), but was not offered the position. *See id.* ¶ 22.

Defendants argue that Jackson offers no evidence that Thomas ever spoke to the principal of Gage Park about Jackson or contacted anyone at Hillcrest about Jackson. Jackson disputes this, and offers the transcript of a conversation between himself and Crawford during which Crawford states that he heard that Thomas told Spivey that the Law Department told Thomas "not to touch" Jackson, *i.e.*, not to hire him. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 22.[3]

## C.    Mediation of Jackson's 2007 Lawsuit

The lawsuit Jackson filed in 2007 went to mediation in June, 2010. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 23. During the mediation, an attorney representing the Board, Lisa Huge, appeared "shocked" upon learning that Jackson was still employed by the Board. *See id.* ¶¶ 23, 30. Huge attests she appeared surprised only because she had not been informed prior to the mediation that Plaintiff was currently employed. *See id.* Defs.' LR 56.1(a)(3) Stmt. ¶ 24. Huge, however, never discussed Jackson's 2007 lawsuit with Thomas, Crawford, or Spivey, and indeed, never contacted Thomas about Jackson. *See id.* ¶ 25. Plaintiff never told Thomas about the June 2010 mediation either. *See id.* ¶ 28. Thomas was not aware that

---

[3]    The admissibility of the transcript is discussed in Section IV.A.

Jackson had previously filed a lawsuit against the Board.  *See id.* ¶ 26.

### D.    Jackson's July 2010 Conversation with Crawford

Jackson had a conversation in July 2010 with Crawford that led Jackson to believe that Crawford knew Jackson had filed a lawsuit against the Board. According to Jackson, the conversation also established that Crawford had been directed not to hire him.  *See id.* ¶ 49.  But it is undisputed that Crawford had no knowledge of the lawsuit until at least October 2011.  *See id.* ¶ 50.[4]

### E.    Jackson's October 10, 2011, Conversation with Crawford and Burrell

The following year, on October 10, 2011, Jackson had a second conversation with Crawford in his office at Area 23.  *See id.* ¶ 53.  This is the meeting that Jackson claims he partially (and secretly) recorded.  *See id.* ¶ 57.  According to Jackson, he came to the meeting at the behest of an EEOC Investigator to obtain corroborating evidence for his EEOC complaints.  *See id.* ¶ 52.  At the meeting, Jackson "shared" with Crawford that he was attempting to corroborate his EEOC statements.  *See id.* ¶¶ 53, 54.  Jackson also met with Michelle Burrell, Thomas's executive assistant.  *See id.* ¶¶ 8, 53.

Crawford testified that Jackson had asked for a character reference for his EEOC case; Jackson claims that he asked for a letter of recommendation for a job

---

[4]    Moreover, Crawford does not remember telling Jackson that Thomas had instructed him not to assist or hire him.  *See id.* Rather, Crawford remembers Thomas telling him in July or August of 2011 to "be careful" with Jackson.  *See id.* ¶ 51. Thomas made no elaboration on this statement, and never said anything more at that time to explicitly discourage Crawford from hiring Jackson.  *See id.* ¶ 51.  In any case, at the time Thomas made this statement, it is undisputed that he did not know about Jackson's lawsuit against the Board.  *See id.* ¶ 26.

from Crawford. *See id.* ¶ 54. Along these lines, Crawford testified that he had provided a letter of recommendation for Jackson in the past and would have done so again had Jackson asked. *See id.* ¶ 55.

### III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013).

In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000). Furthermore, "[i]n granting summary judgment, the court may consider any evidence that would be admissible at trial." *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir. 2002). "The evidence need not be admissible in form (for example, affidavits are not normally

admissible at trial), but it must be admissible in content." *Id.* "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011).

## IV. Analysis

### A.    The Transcript of the October 10 Conversation

The Court starts its analysis with the transcript of the October 10, 2011, meeting that Jackson had with Crawford and Burrell. *See* Pl. LR 56.1(a)(3) Stmt., Ex. B. Defendants argue that this evidence is inadmissible hearsay and otherwise unreliable and should not be considered at summary judgment. *See* Defs.' Mem. Opp'n 6–9. The Court agrees.

According to Jackson, the transcript shows that, during this conversation, Crawford stated that he had learned from Thomas (aka "John") that an unknown person from the legal department had instructed Thomas that Jackson should not be hired. This assertion contains multiple levels of hearsay and is not admissible. "[T]he testimony of a witness that another individual told him or her that the defendant made a [actionable] remark is hearsay, not falling within . . . any exception." *Chisholm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 939 (N.D. Ill. 1998). While the unidentified person in the Law Department's statement arguably might be admissible as statements by a party-opponent's agent or employee under Rule 801(d)(2)(D),[5] the focus here must be on the "outer layer" of hearsay, *i.e.*,

---

[5]    This, however, highlights an additional problem. The Court cannot *assume* an agency relationship where Jackson has made no argument on this point nor supplied any evidence. *See Stassen v. Vill. of Arlington Heights*, No. 00 C 1956, 2002 WL 485664, at *3 (N.D. Ill. Apr. 1, 2002).

Jackson's statement about what Crawford said Thomas said someone else said. *See Halloway v. Milwaukee Cnty.*, 180 F.3d 820, 824–25 (7th Cir. 1999). And Jackson's recount of Crawford's statements does not qualify under Rule 801(d)(2)(D). *See Duncan v. Thorek Mem'l Hosp.,* 784 F. Supp. 2d 910, 921 (N.D. Ill. 2011) (twice-removed "outer layer" statements concerning a possible agent's statement not admissible under Rule 801(d)(2)(D)).

Even if Jackson's statement were not inadmissible hearsay (which it is), the Court concludes that the statement and the transcript itself are inadmissible under Fed. R. Evid. 403, because whatever probative value they may have is far outweighed by their prejudicial nature. *See Mister v. Ne. Ill. Commuter R.R. Corp.*, 571 F.3d 696, 699 (7th Cir. 2009) (noting that statement under Rule 801(d)(2) was still excludable under Rule 403 where it was "unreliable based on the multiple levels of hearsay and lack of precise factual statements").

Under Rule 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, it is undisputed that: (1) the transcript of the secret recording of the October 10, 2011, meeting is not presented in its entirety, *i.e.*, Jackson did not record the entire meeting; (2) Jackson apparently had an unknown individual named "Otis" rerecord the secret recording from Jackson's phone to a CD; (3) the recording was transcribed for Jackson by an unknown individual who Jackson cannot now identify by name or

by the company; (4) Jackson himself cannot authenticate the transcript; (5) Jackson no longer has the original recording; and (6) Crawford cannot recall the details of the conversation without seeing a complete recording. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 58–62. Perhaps most significantly, Jackson cannot identify the individual in the Law Department who supposedly made the statement. *Accord Stassen*, 2002 WL 485664, at *4.

For these reasons, the Court concludes that the transcript of the October 10, 2010, conversation is not admissible, and Jackson may not rely upon it to support or oppose summary judgment.

## B.     Retaliation Claim

Turning to the claims, Jackson first brings a claim for retaliation under Title VII. "An employer who discriminates against an employee because of his race or retaliates against him for protesting unlawful discrimination violates Title VII of the Civil Rights Act of 1964." *Mintz v. Caterpillar Inc.*, --- F.3d ----, No. 14-1881, 2015 WL 3529396, at *5 (7th Cir. June 5, 2015). That is, "[i]n addition to forbidding discrimination directly, Title VII also forbids employers from retaliating against employees by taking adverse employment actions for complaining about prohibited discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 159 (2014) (internal quotations omitted).

"Retaliation may be established by either the direct or the indirect method of proof." *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 (7th Cir. 2014). The direct method "requires the plaintiff to show: (1) that he engaged in activity

protected by the statute; (2) that his employer took an adverse employment action against him; and (3) that there is a causal connection between the plaintiff's protected activity and the adverse employment action." *Id.* The direct method also has a "circumstantial" route, that is, "[p]ieces of circumstantial evidence . . . may be combined to support an inference of discriminatory intent." *Carter v. Chic. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). "Circumstantial evidence can take a number of forms, such as suspicious timing, behavior or comments directed at members of the protected group, evidence showing that similarly-situated employees outside the protected group received systematically better treatment, and evidence that the reason the employer gave for the adverse action was pretextual." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 803 (7th Cir. 2014).

By contrast, the indirect method requires a plaintiff to "show that he: (1) engaged in statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity." *Moultrie,* 766 F.3d at 755. "If [a plaintiff] can establish a prima facie case, the burden then shifts to [defendant] to produce a non-discriminatory reason for its employment action." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 983 (7th Cir. 2014). "If [defendant] meets its burden of production, then [the] plaintiff[ ] must demonstrate that [defendant's] proffered reason is pretextual." *Id.*

### 1. Direct Method

Jackson proceeds only under the direct method. He rests his claim for the

causal connection between his protected activity and the failure to hire almost entirely on the transcript of the secret recording he made of the October 10, 2011, meeting with Crawford. *See* Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 45–56 (noting that Exhibit B supports the causal connection between his protected activity and a failure to hire). But the transcript has been excluded, and without it, the summary record is devoid of any facts from which a reasonable jury could infer retaliatory animus.

First, Jackson focuses his claim entirely on the "Culture of Calm" coordinator position he applied for under Principal Spivey at Corliss. *See* Pl.'s Mot. Summ. J. 5 (focusing only on the "Culture of Calm" position). But it is undisputed that Spivey was never instructed by Thomas or anyone else at the Board to not hire Plaintiff. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 42. Indeed, Spivey was not involved in the first round of interviews, where Jackson fell short. *See id.* ¶ 44. And while Spivey received "recommendations" from the first-round interviewers on whom to interview in the second round, Jackson presents no evidence that the first-round interviewers declined to do so in retaliation for his lawsuit. Finally, the evidence that exists indicates that Spivey was unaware at the time that Jackson had filed a lawsuit. *See* Defs.' LR 56.1(a)(3) Stmt., Ex. G, Decl. Anthony Spivey, ¶16 ("I did not know Adrian Jackson had sued the Board until I was contacted about this lawsuit in 2014.").

As for the two positions where Crawford sat on the interview panel, it is undisputed that no one was hired for the first position, and Jackson's interview scores were lower than other candidates for the second position. *See* Defs.' LR

56.1(a)(3) Stmt. ¶ 19.  Jackson has presented no evidence from which a reasonable jury could find that the Board's reasons for not hiring Jackson for these positions were pretext.  *See Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010) (noting a plaintiff must show that the proffered reasons is "a lie—not just an error, oddity, or oversight").  More fundamentally, it is undisputed that Crawford had no knowledge of Jackson's lawsuit at the time, destroying any inference of a retaliatory motive.  *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 50.[6]

In short, there is nothing in the record tantamount to a "smoking gun" to support Jackson's retaliation claim.  *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (noting that direct evidence must show that "the employer's discriminatory animus motivated an adverse employment action" but that "'smoking gun' evidence of discriminatory intent is hard to come by").

Likewise, the record is insufficient to create a "convincing mosaic" of retaliatory action.  While the Seventh Circuit has declined to categorize the case law's discussion of a "convincing mosaic" as "some kind of esoteric 'mosaic test' or theory," and has emphasized that "[a]ll these cases mean is that the circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference[,]" Jackson must still marshal "various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action."  *Morgan v. SVT, LLC*, 724 F.3d 990, 995–96 (7th Cir. 2013).

---

[6]    Although Thomas may have told Crawford to "be careful" with Jackson, *see* Defs.' LR 56.1(a)(3) Stmt. ¶ 51, the fact is that Crawford had no knowledge of the prior lawsuit; therefore, his actions cannot be attributable to it.

Jackson does not do so here. It is true that Jackson has applied to multiple positions without receiving an offer. *See* Pl.'s Mot. Summ. J. 6. But this alone does not establish retaliatory animus. Again, Thomas's statement to Crawford to "be careful" with Jackson certainly could raise the specter of something amiss, but without any proof that Thomas or Crawford were aware of the lawsuit at the time, Thomas's isolated comment does not create a genuine dispute of material fact under the "convincing mosaic" theory. *See, e.g.*, *Chapman v. City of Danville*, No. 10-CV-2159, 2011 WL 6748511, at *7 (C.D. Ill. Dec. 22, 2011) ("[E]vidence of one comment by [supervisor] is not sufficient to create a 'convincing mosaic'[.]"). Indeed, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008); *see also Perez v. Transformer Manufacturers, Inc.,* 35 F. Supp. 3d 941, 954 (N.D. Ill. 2014) (isolated comments, even in combination with timing, do not show, "directly or by inference" a retaliatory motive). Thomas's comment to Crawford, without more, does not create a genuine dispute of material fact.

Defendants, by contrast, argue that there is no evidence under the direct method that creates a genuine issue of material fact for trial on a retaliation claim. Given the above analysis, this is correct. It is undisputed that: Thomas had no knowledge of any position that Jackson had applied to in 2010 or 2011, never discouraged anyone from hiring Jackson, never instructed Crawford to not assist Jackson in finding a position, never had discussions with principals about Jackson's

applications for employment, was not aware of Jackson's lawsuit at the time, and never told Jackson that he would not help him find a position because of it. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 25; 33–36.[7] Nor is there any dispute of admissible fact on this record that Spivey did not receive a directive not to hire Jackson. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 42.

The only additional evidence Jackson identifies are his general qualifications and the fact that he has received no job offers since the July 2010 mediation. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 48. This is not enough to establish a genuine dispute that a causal connection exists between his sex discrimination lawsuit and his unsuccessful job applications. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006) (proof under the direct method fell short on summary judgment where plaintiff offered "no evidence of a retaliatory motive other than the timing of her termination").

Jackson's motion for summary judgment on his Title VII retaliation claim under the direct method must be denied, and Defendants' motion for summary judgment is granted.

### 2. Indirect Method

Jackson does not offer any arguments in his motion for summary judgment under the indirect method of proof. *See* Pl.'s Mot. Summ. J. 7. Even if Jackson's

---

[7] Because Thomas had no knowledge of the lawsuit, Jackson's "cat's paw" theory, which is based on Thomas using Spivey as a pawn, also falls short. *Cf. Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012) ("'cat's paw' liability may be imposed on an employer where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action.") (internal quotations omitted).

claim were reviewed under the indirect method, however, his retaliation claim still would not survive summary judgment because he fails to identify any similarly situated comparators.

Under the indirect method, a plaintiff must identify relevant compactors. *See Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (where plaintiff "failed to identify a similarly situated employee," his Title VII claim could not proceed on summary judgment). While the "similarly situated" inquiry should not be applied "mechanically or inflexibly," a plaintiff must still demonstrate that similarly situated individuals were "directly comparable to [him] in all material respects." *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 810 (7th Cir. 2011) (internal quotations omitted). Factors to consider are "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *Id.* (internal quotations omitted).

Jackson offers two comparators: Crawford and Flemming. *See* Pl.'s Mem. Opp'n 7; Pl.'s LR 56.1(B)(3)(b) Stmt. ¶ 72. But Crawford is not comparable because it is undisputed that he was Jackson's supervisor. Moreover, it is undisputed that Crawford occupied a management position and Jackson did not. *See Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009) (finding management and non-management employees are not similarly situated). Flemming is likewise not similarly situated. Flemming was a "security guard," *see* Pl.'s LR 56.1(a)(3) Stmt. ¶ 46, and did not hold the same position as Jackson. While this does not necessarily

render Flemming incomparable, it is incumbent upon Jackson to provide more evidence of comparability . *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007) (noting that a "difference in job title alone is not dispositive"). However, Jackson offers no evidence of Flemming's education, supervisor, experience, qualifications, or the standards to which he was held. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2002) (noting that a similar job description is not enough where a plaintiff failed to prove no differences in other material factors). As such, Jackson has not met his burden to show that Flemming was similarly situated. *See Bio*, 424 F.3d at 597. Accordingly, Jackson cannot rely upon the indirect method to oppose summary judgment.

### B. Equal Protection Claim Under 42 U.S.C. § 1983

Jackson also asserts a claim under 42 U.S.C. § 1983 for violation of his equal protection rights. In particular, Jackson's claim under § 1983 is the same as his claim under Title VII; in fact, Jackson does not differentiate between Title VII and § 1983 in his motion for summary judgment, instead arguing that the same evidence and standards are dispositive of both claims. *See* Pl.'s Mot. Summ. J. 7, 10. For their part, Defendants argue that the equal protection claim fails on a number of fronts: it is time-barred under the applicable statute of limitations; it is not a proper avenue for a claim of a violation of rights under Title VII; and there is no basis for liability against Thomas or the Board. *See* Defs.' Mot. Summ. J. 16–17.

"Section 1983 provides a remedy for deprivation of constitutional rights . . . . It supplies no remedy for violations of rights created by Title VII." *Gray v. Lacke*,

885 F.2d 399, 414 (7th Cir. 1989). Here, Jackson's claim under 42 U.S.C. § 1983 is predicated on the right to be free of retaliation for protesting against sex discrimination. But the "right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause." *Id.*

"Only when the underlying facts support both a Title VII and a constitutional deprivation claim can a plaintiff maintain an action under § 1983 and bypass the procedural requirements of Title VII." *Id.* Jackson does not allege and has not argued a separate constitutional claim under § 1983. *Cf.* Compl. ¶ 40. And any "class of one" claim under the Fourteenth Amendment fails because such claims are unavailable to public employees like Jackson. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 607, (2008). As such, § 1983 is not a proper avenue for Jackson's claims here. Summary judgment therefore is appropriate in favor of Defendants with respect to Jackson's claim under 42 U.S.C. § 1983.

## V. Conclusion

For the reasons provided herein the Court denies Plaintiff's Motion for Summary Judgment [68]. The Court grants Defendants' Motion for Summary Judgment [78]. Civil case terminated.

**SO ORDERED**                          **ENTER: 9/25/15**

_____

**JOHN Z. LEE**
**United States District Judge**